UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| TRUSTEES OF IRON WORKERS DEFINED CONTRIBUTION PENSION FUND, TRUSTEES OF IRON WORKERS LOCAL NO. 25 PENSION FUND, TRUSTEES OF IRON WORKERS HEALTH FUND OF EASTERN MICHIGAN, TRUSTEES OF IRON WORKERS LOCAL 25 VACATION PAY FUND, and TRUSTEES OF IRON WORKERS APPRENTICESHIP FUND OF EASTERN MICHIGAN, | Case No. 21-cv-13041<br><br>Honorable Nancy G. Edmunds |
| Plaintiffs, | |
| v. | |
| NEXT CENTURY REBAR, LLC, | |
| Defendant. | |
| _____/ | |

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT [36]**

Plaintiffs Trustees of the Iron Workers' Local No. 25 Pension Fund, *et al.*, bring this action pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1132, to collect delinquent fringe benefit contributions owed to them by Defendant Next Century Rebar, LLC. Before the Court is Plaintiffs' Motion for Summary Judgment. (ECF No. 36.) The motion is fully briefed. (ECF Nos. 38, 39, 41.) The Court finds that its decision making process would not be significantly aided by oral argument, therefore the motion is decided on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2), For the reasons that follow, Plaintiffs' motion is granted.

1

## I.     Background

### A.     The Parties

Plaintiffs, acting as Trustees, oversee the Iron Workers' Local No. 25 Pension Fund, Iron Workers' Health Fund of Eastern Michigan, Iron Workers' Local No. 25 Vacation Pay Fund, Iron Workers' Defined Contribution Pension Fund, and Iron Workers Apprenticeship Fund of Eastern Michigan (collectively, the "Funds"). These Funds are established under the Labor Management Relations Act of 1947 (the "Taft-Hartley Act") and are governed by the Employee Retirement Income Security Act ("ERISA") and the terms of the trust agreements that establish them. (ECF Nos. 36-8; 36-21; 36-20; 36-22; 36-23; and 36-6.) Plaintiffs are fiduciaries of the funds; the day-to-day administration of the Funds is handled by a third-party administrator.

Defendant Next Century Rebar LLC is a Nevada limited liability company that operates as a union contractor specializing in the supply and installation of reinforcing steel. Defendant conducts its operations across multiple states.

### B.     The Collective Bargaining Agreement

In June 2020, Defendant became a signatory to a collective bargaining agreement (the "CBA") with Local Union No. 25 ("Local 25"), a union participating in employee benefit plans established by the Funds. (ECF No. 36-6.) This CBA mandates that Defendant make fringe benefit contributions to the Funds for covered work. The benefit fund contributions pay for pension, retirement, health care, vacation, and other benefits for the employees performing the work. The CBA also binds Defendant to the terms of the trust agreements through which these employee benefit plans are established and administered.

Contributions are required to be paid at the wage rates specified in the CBA for work performed within Local 25's jurisdiction. Delinquent contributions, *i.e.*, those not received by the 26th of the following month, incur liquidated damages and are subject to interest, and attorney's fees and costs under ERISA. The CBA and Trust Agreements also require signatory contracts to be audited to ensure all employee benefit contributions have been appropriately paid.

### C. The International Agreement

Defendant also signed an International Agreement with the International Association of Bridge, Structural, Ornamental, and Reinforcing Iron Workers. (ECF No. 38-4.) This agreement obligates Defendant to adhere to the wage and benefit scale of the local union where work was performed, in this case, Local 25. The International Agreement also requires Defendant "to make timely payments into all fringe benefit funds in accordance with the applicable Local Union collective bargaining agreement" and "those funds shall be the funds of the home Local Union of the geographic jurisdiction in which the work is performed," *i.e.*, Local 25. (ECF No. 38-4, PageID.904.)

### D. The Michigan Project and Audit

Between June 2020 and October 2021, Defendant employed union ironworkers from Local 25, as well as from out-of-state unions, on a substantial project in Michigan, known as the "Michigan Project." As this was Defendant's first time providing workers in Michigan, Defendant sought guidance from Local 25 regarding the payment of fringe contributions for its out-of-state workers. Local 25 directed its agent, Anthony Ramos, to contact Defendant regarding its questions on the payment of dues. (ECF No. 38-5.) While there is some dispute about the details of these conversations, Defendant states that

3

Ramos provided instructions to pay fringe contributions directly to the home locals of Local 846 and Local 416 workers and to pay vacation and dobie dues to Local 25. (ECF No. 38-2.) This instruction contradicted language in the CBA. (*See* ECF No. 36-6, PageID.466 ("[A]n Employer shall make contributions to the various Iron Workers' Local No. 25 Fringe Benefit Funds . . . [m]onthly contributions to all such Funds . . . shall be combined and remitted in one check and payable to 'Iron Workers Local No. 25 Fringe Benefit Funds.'"))

On March 18, 2021, the Funds initiated an audit of Defendant's records related to the Michigan Project. (ECF No. 36-5.) This audit revealed substantial unpaid fringe benefit contributions totaling $941,358.46 for hours worked from June 2020 to March 2021. (*Id.* at ¶ 8.) Subsequent documents produced in discovery indicated additional unpaid contributions of $706,690.76 for hours worked from April 2021 to October 2021 by Local 25 and Local 846 workers, and $154,106.16 for hours worked from April 2021 to August 2021 by Local 416 workers.[1] (*Id.* at ¶¶ 9, 10; ECF No. 36-10; ECF No. 36-18.) To date, Defendant has not remitted these outstanding principal fringe benefit contributions to the Plaintiff Funds. Instead, Defendant claims, it relied on Ramos' directions and made the fringe contributions to the out-of-state Local 846 and Local 416 funds.[2] (ECF No. 36-11; ECF No. 38-2.)

---

[1] Defendant claims the audit results are flawed, but provides no evidence to contradict the affidavit of Plaintiffs' auditor who, based on his 18 years of experience, affirms that he is "confident in [his] calculations and the basis for the audit balance." (ECF No. 36-5, PageID.433.)

[2] Defendant claims its payments to Local 846 and Local 416 are consistent with the International Agreement, which allows fringe contributions for "key employees" to be made to the employees' home local. (ECF No. 38-4, PageID.903-04.) There is no evidence, however, to support Defendant's argument that the Local 846 and Local 416 workers were "key employees" as that term is used in the International Agreement. (*See id.*; ECF No. 39-2, PageID.1269 (where, in response to an interrogatory, Defendant states that it has not designated any employee as a "key employee.") Moreover, despite Defendant's argument to the contrary, the International Agreement does not permit Defendant to "treat" employees as key employees. (ECF No. 41, PageID.1305) *See also* ECF No. 38-4, PageID.903-04, 906 (discussing key employees).

The Trust Agreements authorize the Trustees to take legal action to collect delinquent fringe benefit contributions, along with interest, liquidated damages, and the costs of collection. (ECF No. 36-8.) These agreements also stipulate that a delinquent employer may be held responsible for liquidated damages of up to 20% of unpaid contributions, interest at 2% over the prime rate, and attorneys' fees and costs for the collection of unpaid contributions. *See also* 29 U.S.C. § 1132(g)(2). In light of these facts, Plaintiffs now move for summary judgment to recover the unpaid contributions and seek interest, liquidated damages, and attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(2).

## II. Standard of Review

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must "set out specific facts showing a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." *Id.* at 248. But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)).

**III.     Analysis**

    **A.     Liability**

With the enactment of ERISA, Congress established a comprehensive framework wherein beneficiaries can ascertain their rights and obligations at any time, built around the reliance on the written plan documents' content. *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995). This reliance on the face of written plan documents bestows certainty and predictability upon employee benefit plans, thereby serving the interests of both employers and their employees. *Orrand v. Scassa Asphalt, Inc.*, 794 F.3d 556, 563 (6th Cir. 2015) (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 402 (6th Cir.1998) (*en banc*)). It is therefore not surprising that ERISA requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement" to "make such contributions *in accordance with the terms and conditions of such plan or such agreement*." 29 U.S.C. § 1145 (emphasis added).

Here, by entering into the CBA with Local 25, Defendant agreed to submit fringe benefit contributions to the Funds for all work performed within Local 25's jurisdiction, including work on the Michigan Project. (ECF No. 36-6, PageID.466-70.) This is consistent with the terms of the International Agreement, which provides that covered employers must "make timely payments into all fringe benefit funds in accordance with the applicable Local Union collective bargaining agreement." (ECF No. 36-7, PageID.502.) True, the International Agreement also provides that "[u]nder no circumstances shall there be a request for a payment of double fringe benefit amounts," (ECF No. 36-7, PageID.502), but Defendant provides no authority to support its

contention that this clause relieves Defendant of its obligations under the CBA where Defendant mistakenly paid contributions to out-of-state funds.

Defendant contends that it submitted payments to the out-of-state funds based on instructions from Plaintiffs' representative, Anthony Ramos. (ECF No. 38, PageID.830.) Ramos denies providing this instruction, (ECF No. 36-4, PageID.426), but even if he did, an oral instruction from any of Plaintiffs' agents would not alter the terms of the written agreements. A "core functional requirement[ ]" of ERISA is that each "employee benefit plan shall be established and maintained *pursuant to a written instrument.*" *Curtiss–Wright Corp.*, 514 U.S. at 83 (emphasis in the original). Thus, it is the law in the Sixth Circuit and elsewhere that "[b]ecause the multi-employer plans may rely on the literal terms of written agreements between the employer and the union . . . any oral understandings or practices between the contracting parties 'are immaterial.'" *Operating Eng'rs Local 324 Health Care Plan v. G&W Const. Co.*, 783 F.3d 1045, 1051 (6th Cir. 2015) (quoting *Bakery & Confectionery Union & Indus. Int'l Health Benefits & Pension Funds v. New Bakery Co. of Ohio*, 133 F.3d 955, 959 (6th Cir. 1998)). "[T]he words, conduct, action, and inaction of the union are simply not relevant to a § 515 collection action that is based on the literal and unambiguous terms of an existing ERISA plan document or collective bargaining agreement." *Orrand*, 794 F.3d at 563.

Because it is undisputed that Defendant is a signatory to the CBA and International Agreement and because it performed work within the Funds' geographic jurisdiction in Michigan and did not submit the required contributions to the Funds for such work, summary judgment is appropriate.

7

### B. Damages

Where, as here, a fiduciary initiates a lawsuit to recover delinquent contributions and is awarded judgment in its favor, ERISA requires the Court to award all of the following:

> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of—
>
> (i) interest on the unpaid contributions, or
>
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

### 1. Unpaid Contributions

The Funds' auditor calculated the total unpaid fringe benefit contributions based on records Defendant provided for the wages and hours worked by its employees on the Michigan Project. (ECF No. 36-5, PageID.430-31.) The terms of the CBA dictate the manner of calculation for the contributions owed, which is based on the total number of ironworker hours worked each month by an employer performing work within the Funds' jurisdiction, multiplied by either the applicable fringe benefit rate for a particular benefit fund, or by a percentage of wages paid. (*Id.*, PageID.429-30; ECF No.36-6, PageID.465-70.) Based on this calculation, Defendant owes the Funds a total of **$1,787,300.75** for the

Michigan Project.[3] (ECF No. 36-5, PageID.431-32.) This amount does not include $14,854.63 in contributions owed for advancement, special assessment, impact contributions, and apprentice supplement, because the Funds do not govern those specific contributions. (*Id.*; ECF No. 36, PageID.399 n.1.)

### 2. Interest

Interest on unpaid fringe benefit contributions is determined using the rate provided under the plan, or, if none, the rate prescribed under Section 6621 of Title 26. 29 U.S.C. § 1132(g)(2).

Here, the trust agreements for the Iron Workers' Local No. 25 Pension Fund and the Iron Workers' Local No. 25 Vacation Pay Fund incorporate the terms of the CBA with respect to an interest assessment, which provides for interest at a rate of 2% over the prime rate, or a total of 5.25%.[4] (ECF No. 36-8, PageID.519; ECF No. 36-22, PageID.687; ECF No. 36-6, PageID.472.) The trust agreements for the other Plaintiff Funds do not identify a particular rate of interest, so the terms of § 1132(g)(2) apply, which provides that the interest rate will be the rate identified under 26 U.S.C. § 6621. Based on these parameters, the total interest owed on unpaid contributions to the Plaintiff Funds equals **$143,075.41**.[5] *See* ECF No. 36-19 (detailing interest calculations).

---

[3] Defendant argues the audit results are inaccurate for various reasons, but provides no expert testimony or other evidence to support its contentions. (*See* ECF No. 38, PageID.841.) On the other hand, Plaintiffs supply evidence to support its contention that the audit results are accurate. (*See, e.g.*, ECF No. 36-5.)

[4] The prime rate in effect at the time the hours were worked was 3.25%. *See* https://www.jpmorganchase.com/about/our-business/historical-prime-rate.

[5] This amount is comprised of $104,299.62 in interest due to the Pension Fund; $10,095.89 in interest due to the DC Fund; $18,859.29 in interest due to the Health Fund; $7,333.55 in interest due to the Vacation Fund; and $2,487.06 in interest due to the Training Fund.

### 3. Liquidated Damages and Additional Assessments

The Court is also instructed to award liquidated damages, or an additional assessment equal to the interest payment, on top of the initial interest calculated. 29 U.S.C. § 1132(g)(2)(C). Here, the trust agreements for the Iron Workers Defined Contribution Pension Fund and Iron Workers' Local Union 25 Training Fund provide generally for an assessment of liquidated damages without referencing a specific percentage. (ECF No. 36-21, PageID.682-83; ECF No. 36-23, PageID.691-92.) Accordingly, § 1132(g)(2) provides that interest will be assessed as to the contributions owed to those funds a second time. The trust agreements for the Iron Workers' Local No. 25 Pension Fund and Iron Workers' Local No. 25 Vacation Pay Fund provide that liquidated damages are set forth in the CBA, which mandates liquidated damages of up to 20% associated with late payment contributions. (ECF No. 36-8, PageID.519; ECF No. 36-22, PageID.687; ECF No. 36-6, PageID.472.) Lastly, the trust agreement for the Iron Workers' Health Care Trust of Eastern Michigan provides that liquidated damages are presumed to be the greater of the sum of $20 per delinquency or three percent over the prime rate on the amount which is delinquent. (ECF No. 36-20, PageID.674.) A calculation of three percent over the prime rate results in an amount that is less than the interest assessed, so the additional assessment is equal to the amount of interest. *See* § 1132(g)(2).

These calculations amount to a total award of **$288,598.80** in liquidated damages/additional assessments.[6] *See* ECF No. 36-19 (detailing liquidated damages and additional interest calculations).

---

[6] This amount is comprised of $242,059.93 in liquidated damages for the Pension Fund; $10,095.89 as an additional assessment equal to the interest payment for the DC Fund; $18,859.29 as an additional

### 4. Costs and Attorney Fees

In addition to the amount of unpaid contributions, interest on the unpaid contributions, and liquidated damages, ERISA makes an award of costs and attorneys' fees mandatory in an action brought by a fiduciary for or on behalf of a plan to enforce § 1145, which results in a judgment in favor of the plan. 29 U.S.C. § 1132(g)(2)(D). The trust agreements and CBA also call for the collection of attorneys' fees and costs, and the CBA requires an employer to pay for the costs of the payroll audit if the audit reflects additional contributions due in an amount greater than five percent of the total fringe benefit contributions paid on a project. (ECF Nos. 36-8, PageID.519; 36-21, PageID.682-83; 36-20, PageID.674; 36-22, PageID.687; 36-23, PageID.691-92; and 36-6, PageID.472.) Because Defendant is liable for the delinquent contributions, interest, and liquidated damages as detailed above, Defendant is also liable for reasonable costs of collection and attorneys' fees for this action.

### C. Defendant Fails to Show Entitlement to a Setoff

Defendant asserts that it is entitled to a common-law setoff remedy for its erroneous payments to the Local 846 and 416 funds. (ECF No. 38, PageID.842.) This argument lacks legal merit. Though equitable relief itself is not barred under ERISA, the factual scenarios in the cases Defendant relies upon are not analogous to the facts of this case. *See, e.g.*, Coar *v. Kazimir*, 990 F.2d 1413 (3d Cir. 1993) (wherein a plan fiduciary, who was also a plan participant, challenged the reduction of his pension benefits to allow the plan to recoup the damages he caused when he engaged in a conspiracy to obtain

---

assessment equal to the interest payment for the Health Fund; $15,096.63 in liquidated damages for the Vacation Fund; and $2,487.06 as an additional assessment equal to the interest payment for the Training Fund.

kickbacks in exchange for channeling $20 million from the pension fund's assets). Moreover, Defendant's right to pursue a claim of unjust enrichment, or similar, against Local 846 or Local 416 funds is not an issue before this Court and has no affect on the damages due to Plaintiffs.

## IV.     Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiffs' Motion for Summary Judgment (ECF No. 36) is **GRANTED**. IT IS FURTHER ORDERED that Plaintiffs may, within 28 days, file a motion to amend the judgment to include specific costs and attorney fees. *See* Fed. R. Civ. P. 59(e). Defendant may elect to file a short response to the motion, up to ten pages and within 14 days from the time the motion is filed, discussing only the reasonableness of the costs and fees detailed by Plaintiffs.

**SO ORDERED**.

                                                     s/ Nancy G. Edmunds
                                                   Nancy G. Edmunds
                                                   United States District Judge

Dated: September 17, 2023

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 17, 2023, by electronic and/or ordinary mail.

        s/ Lisa Bartlett
        Case Manager